UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN DIVISION

Noam J. Kritzer (nkritzer@bakoskritzer.com)
Edward P. Bakos (ebakos@bakoskritzer.com)
**Bakos & Kritzer**
147 Columbia Turnpike
Florham Park, New Jersey
Telephone: 212-724-0770
Facsimile: 973-520-8260

*Attorneys for the Defendants:*
*Tristar Products, Inc. and*
*Wal-Mart Stores, Inc.*

| | |
|---|---|
| **BLUE GENTIAN, LLC and NATIONAL EXPRESS, INC.,** | |
| Plaintiffs, | **CIVIL ACTION FILE NUMBER:** |
| v. | **13-CV-1758-NLH-AMD** |
| **TRISTAR PRODUCTS, INC.** | |
| Defendant. | |
| **BLUE GENTIAN, LLC and NATIONAL EXPRESS, INC.,** | |
| Plaintiffs, | **CIVIL ACTION FILE NUMBER:** |
| v. | **13-CV-7099-NLH-AMD** |
| **WAL-MART STORES, INC. d/b/a SAM'S CLUB and SAM'S WHOLESALE CLUB,** | |
| Defendant. | **Motion Returnable August 17, 2015** **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO
DISSOLVE STAY AND TO CONSOLIDATE CIVIL ACTION NO. 13-7099
INTO CIVIL ACTION NO. 13-1758, AND TO STAY THE DETERMINATION OF
<u>DAMAGES AGAINST DEFENDANT WAL-MART STORES, INC.</u>**

**TABLE OF CONTENTS**

|  | Page |
|---|---|
| TABLE OF CONTENTS | i |
| TABLE OF AUTHORITIES | ii |
| I. INTRODUCTION | 1 |
| II. JUDGE CLARK'S ORDER STAYED THE CASE AGAINST THE RETAILERS | 3 |
| III. ARGUMENT | 6 |
|    A. Changes in the Litigation Do Not Disturb Judge Clark's Rationale for Ordering the Stay of the Retail Defendants | 6 |
|       i. Settlement of the Telebrands Litigation has No Impact on Judge Clark's Rationale for Ordering a Stay of the Retailer Action | 7 |
|       ii. The Addition of Design Patents to the Action has No Impact on Judge Clark's Rationale for Ordering a Stay of the Retailer Action | 8 |
| IV. CONCLUSION | 11 |

## TABLE OF AUTHORITIES

Case                                                                                                                                                                                 Page(s)

*Bechik Prods. Inc. v. Flexible Prods., Inc.*,
   225 F.2d 603 (2d Cir. 1955) ................................................................................. 5

*Birdsell v. Shaliol*,
   112 U.S. 485 (1884) ............................................................................................. 5

*Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*,
   402 U.S. 313 (1971) ............................................................................................. 5

*Gen. Chem. Co. v. Standard Wholesale Phosphate & Acid Works, Inc.*,
   101 F.2d 178 (4th Cir. 1939) ............................................................................... 5

*In re Nintendo*,
   756 F.3d 1365 (Fed. Cir. 2014) ........................................................................... 3

*Katz v. Lear Siegler, Inc.*,
   909 F.2d 1459 (Fed. Cir. 2014) ................................................................... 1, 4, 7

*Kessler v. Eldred*,
   206 U.S. 285 (1907) ............................................................................................. 5

*Lee v. Dayton-Hudson Corp.*,
   838 F.2d 1186 (Fed. Cir. 1988) ......................................................................... 10

*Mendenhall v. Barber Green Co.*,
   26 F.3d 1573 (Fed. Cir. 1994) ............................................................................. 5

*O2 Micro Int'l Ltd. v. Taiwan Sumida Elecs., Inc.*,
   315 Fed. App'x 266 (Fed. Cir. 2009) ................................................................. 5

*Pharmacia & Upjohn Co. v. Mylan Pharmeceuticals, Inc.*,
   170 F.3d 1373 (Fed. Cir. 1999) ........................................................................... 5

*Richmond v. Lumisol Elec. Ltd.*, No. 13-1944,
   2014 U.S. Dist. LEXIS 59939 (D.N.J. Apr. 30, 2014) ............................... 3, 4, 6, 7

*Transclean Corp. v. Jiffy Lube Int'l, Inc.*,
   474 F.3d 1298 (Fed. Cir. 2007) ....................................................................... 5, 8

*Ultra Prods. v. Best Buy Co.*, No. 09-1095,
   2009 U.S. Dist. LEXIS 78678 (D.N.J. Sept. 1, 2009) ......................................... 4

I.  **INTRODUCTION**

Defendants Tristar Products Inc. ("Tristar") and Wal-Mart Stores, Inc. ("Wal-Mart") hereby oppose the motion filed by Plaintiffs Blue Gentian, LLC ("Blue Gentian") and National Express, Inc. ("National Express") (Doc. 141)[1] requesting the Court to dissolve the stay issued by the Honorable James B. Clark, III, U.S.M.J. on October 2, 2014.  Doc. 109, 110.

In short, the analysis implemented by Judge Clark in following *Katz v. Lear Siegler, Inc.* 909 F.2d 1459 (Fed. Cir. 2014) continues to apply to the present actions.  Specifically, the procedural posture of the litigation has not changed in any way that would alter the judicial economy and efficiency reasoned by Judge Clark in implementing the stay.  Judge Clark determined that "Blue Gentian and NEI's concern of duplicative litigation is an unlikely scenario…" Doc. 109, at 11.  Despite the settlement of actions against another manufacturer and its retailers and the addition of design patents, duplicative litigation remains unlikely and Judge Clark's stay should not be lifted.

Plaintiffs' attempt to accord some weight to the impending settlement of concurrently-pending Civil Action Nos. 12-6671 and 13-0481 is a red herring.  Indeed, Plaintiffs do not provide any substantive argument to support that argument, choosing instead to state without support that "judicial economy is no longer served" by the stay because there are "now only two cases present before the Court, and they deal with the same accused product and same claims of patent infringement."  Doc. 141, at 3.  In reality, Judge Clark determined that judicial economy and efficiency were related to each manufacturer and retailer defendant -- the total number of cases was irrelevant.  That is, Judge Clark determined that litigation against the manufacturer and retailer

---

[1] All docket numbers herein refer to Civil Action No. 13-1758.  Corresponding entries can be found in Civil Action No. 13-7099.

1

alleging infringement of the same patent and the same products was unnecessary because, as Plaintiffs concede, "resolution in the manufacturer suits coupled with the fact that the manufacturers have a duty to indemnify the retailers, would simplify the Retail Defendants' actions, and could have a major and even dispositive effect on those actions." *Id.* at 2-3; Doc. 109, at 9. Judge Clark's rationale continues to apply, and is perhaps *more* applicable because the remaining cases deal with the exact same accused product and the identical claims of patent infringement.

Plaintiffs further argue that the addition of design patent infringement claims makes duplicative litigation "a near certainty." Doc. 141, at 5. In short, Plaintiffs argue that duplicative litigation is a "near certainty" because the prohibition on recovery of damages from both manufacturer and retailer does not apply to design patent infringement. However, Plaintiffs fail to articulate why Judge Clark's reasoning does not apply. That is, resolution in the manufacturer suits with respect to the design patents, coupled with the fact that the manufacturers have a duty to indemnify the retailers, will still simplify the retailer's action and could have a major and even dispositive effect on that action. Doc. 109, at 9. To the extent that damages form the basis for Plaintiffs' rationale for lifting the stay, Plaintiffs have conceded that "determination of damages of the Retailer Defendant should then be stayed pending resolution of the remaining issues." Doc. 141, at 4. Finally, even if Plaintiffs ultimately re-litigate the design patent claims, the cost of design patent litigation is substantially lower than utility patent litigation (and the limited cost to repeat certain aspects of design patent litigation is even lower), and therefore judicial economy still favors staying the litigation over the utility patent infringement claims rather than subjecting the retailer to a far higher cost of litigation.

## II.     JUDGE CLARK'S ORDER STAYED THE CASE AGAINST THE RETAILERS

On October 2, 2014, Judge Clark issued an Order staying the case against the retail defendants because while the Customer-Suit exception "does not directly apply to this case…the guiding principles of judicial economy and efficiency behind the exception support severing the cases into separate manufacturer and retailer cases, and staying the Retail Defendants actions." Doc. 109, at 8 (citing *In re Nintendo*, 756 F.3d 1365 (Fed. Cir. 2014); *Richmond v. Lumisol Elec. Ltd.*, No. 13-1944, 2014 U.S. Dist. LEXIS 59939, at *25 (D.N.J. Apr. 30, 2014) ("*Richmond I*")) In doing so, Judge Clark recognized that "[c]ourts have exercised their discretion to sever the claims against the downstream defendant from the upstream defendant and then stay the severed claims against the downstream defendant given the 'peripheral nature' of claims against the downstream defendant." *Id.* at 7 (citing *Richmond I*, 2014 U.S. Dist. LEXIS 59939, at *25):

> The rationale behind severing and staying in these circumstances is that 'second-hand entities like retailers or distributors [are] not involved and [would] not have substantive knowledge about the patent infringement, which would begin at the design and manufacture stages.' The upstream defendant represents 'the real party in interest,' and ultimately, an infringement claim against the upstream defendant 'is more likely to restore contested property rights nationwide than securing an injunction' against a downstream defendant purchaser. Moreover, the downstream defendant would only be liable if the upstream defendant infringed the plaintiff's patent, and thus, adjudication of the patent infringement claim against the upstream defendant often disposes of the claim against the downstream defendant.

*Id.* at 7-8 (citing *Richmond I*, at *25-26) (internal citations omitted).

Judge Clark further identified Plaintiffs' "major concern…is that there is a potential for duplicative and additional litigation because the Retail Defendants have not agreed to be bound by the judgments in the manufacturer cases." *Id.* at 8. However, Judge Clark found that such an agreement is not required: "[T]he precedent this Court relies upon did not require or condition a stay on such agreement." *Id.* (citing *Richmond I*, 2014 U.S. Dist. LEXIS 59939; *In re Nintendo*, 756 F.3d 1365; *Ultra Prods. v. Best Buy Co.*, No. 09-1095, 2009 U.S. Dist. LEXIS 78678 (D.N.J.

3

Sept. 1, 2009) ("As the Federal Circuit noted in *Katz*, . . . the manufacturer's case need only promise to resolve the 'major issues' concerning the claims against the customer, and not every conceivable issue.") (citing *Katz*, 909 F.2d at 1464)).

Judge Clark also found that the rationale of the Customer Suit exception, namely that the substantive knowledge of patent infringement resides with the upstream manufacturer, overrides the lack of agreement by the downstream retailer to be bound:

> The *Katz* Court rejected this argument finding that '[a]lthough there may be additional issues involving the defendants in the [dealer] action, their prosecution will be advanced if [plaintiff] is successful on the major premises being litigated in [*Katz*], and may well be mooted if [plaintiff] is unsuccessful.' The same reasoning applies in the present case. As such, the canons of the Customer-Suit exception militate in favor of a stay, without imposing a condition that the Retail Defendants agree to be bound by the judgment of the manufacturer action.

*Id.* at 9 (internal citations omitted).

Plaintiffs had argued, as they do here, that there is a likelihood of duplicative litigation if a stay is entered. However, Judge Clark determined that because the manufacturer actions all involved the same patents and the same issues of infringement, invalidity, and unenforceability, that judicial economy favors a stay:

> The resolution of such issues in the manufacturer actions, and the fact that the manufacturers have agreed to indemnify its' [sic] customers, would not only simplify the Retail Defendants' actions, but could have a major and even dispositive effect on such actions. *See, e.g., Katz*, 909 F.2d at 1464 (observing that additional issues involving customers "may well be mooted" if patent holder is unsuccessful in litigation against manufacturers); *Richmond I*, 2014 U.S. Dist. LEXIS 59939, at *26 (noting that "adjudication of the patent infringement claim against the upstream defendant often disposes of the claim against the downstream defendant").

*Id.* at 9-10.

Judge Clark specifically identified the situations by which Plaintiffs' case would "be mooted" should Defendants prevail in the litigation:

4

> For instance, if the manufacturers prevail in proving patent invalidity or unenforceability, the Retailer Defendants would be free to assert collateral estoppel as a bar against a subsequent suit by Blue Gentian and NEI. *See Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 333 (1971) (holding that a judgment of patent invalidity in one case can collaterally estop the patent owner from contesting the invalidity in a subsequent, as long as the patent owner had a full and fair opportunity to litigate the validity of the patent in the first case); *Mendenhall v. Barber Green Co.*, 26 F.3d 1573, 1577 (Fed. Cir. 1994); *O2 Micro Int'l Ltd. v. Taiwan Sumida Elecs., Inc.*, 315 Fed. App'x 266 (Fed. Cir. 2009); *Pharmacia & Upjohn Co.*, 170 F.3d at 1379 (citing *Gen. Chem. Co. v. Standard Wholesale Phosphate & Acid Works, Inc.*, 101 F.2d 178, 181 (4th Cir. 1939) ("The principle of *Blonder-Tongue*. . . respecting collateral estoppel also applies to unenforceability.")). It is also possible that if the manufacturers prevail, they may be able to obtain an injunction preventing Blue Gentian and NEI from suing the Retail Defendants for patent infringement. *See Kessler v. Eldred*, 206 U.S. 285 (1907) (holding that a manufacturer, if he prevailed in an infringement suit brought against him by the patentee, could prevent the impairment of his rights under the judgment but enjoining the patentee from prosecuting suits against his customer).

*Id.* at 10.

Judge Clark further detailed the reasons a stay is warranted even if Plaintiffs should prevail, including the effect an injunction against the manufacturer would have against the retailer:

> If, however, Blue Gentian and NEI prevail against the manufacturers for patent infringement, the Retailer Defendants would not be barred from defending a suit brought by Blue Gentian and NEI for patent infringement. *See Bechik Prods. Inc. v. Flexible Prods., Inc.*, 225 F.2d 603, 606 (2d Cir. 1955) (quoting *Gen. Chem. Co. v. Standard Wholesale Phosphate & Acid Works, Inc.*, 101 F.2d 178, 181 (4th Cir. 1939) (explaining that "[t]he purchaser of a manufactured product should not be barred . . . from defending a suit brought against him by a patentee for infringement against the manufacturer, for the very good reason that he has had no opportunity to be heard with respect to infringement in the suit against the manufacturer"). Regardless of the effects of collateral estoppel, Blue Gentian and NEI's concern of duplicative litigation is an unlikely scenario because, even if Blue Gentian and NEI prevail against the manufacturers, they could be precluded from recovering from the Retail Defendants if they fully collect from the manufactures. *See Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1304 (Fed. Cir.2007) (explaining that "a patentee may not sue users of an infringing product for damages if he has collected actual damages from a manufacturer or seller, and those damages fully compensate the patentee for infringement by users") (citing *Birdsell v. Shaliol*, 112 U.S. 485, 1488-89 (1884)). Moreover, if Blue Gentian and NEI obtain injunctive relief against the manufacturers, it would have the practical effect of enjoining the Retail Defendants from further distribution or sale of the accused products since Telebrands and Tristar are the sole manufacturers of these products.

5

*Id.* at 10-11.

There can be no argument that Judge Clark's Order (1) applied the principles of judicial economy behind the Customer-Suit exception; (2) took Plaintiffs' "potential duplicative litigation" argument into account; 3) reasoned that because the actions involved the same patents and infringement claims, and because the manufacturers had a duty to indemnify the retailers, a stay would simplify a retail defendant's actions and could have a major and even dispositive effect on those actions; (4) determined that duplicative litigation is "an unlikely scenario," and (5) an injunction obtained against the manufacturers would practically enjoin the retailers. Plaintiffs concede as much. Doc. 141, at 2-3.

### III. ARGUMENT

#### A. Changes in the Litigation Do Not Disturb Judge Clark's Rationale for Ordering the Stay of the Retail Defendants

It is important to note the rationale that Judge Clark followed when determining that a stay of the retail defendants was warranted. Judge Clark recognized that "[c]ourts have exercised their discretion to sever the claims against the downstream defendant from the upstream defendant and then stay the severed claims against the downstream defendant given the 'peripheral nature' of claims against the downstream defendant." *Id.* at 7 (citing *Richmond I*, 2014 U.S. Dist. LEXIS 59939):

> The rationale behind severing and staying in these circumstances is that 'second-hand entities like retailers or distributors [are] not involved and [would] not have substantive knowledge about the patent infringement, which would begin at the design and manufacture stages.' The upstream defendant represents 'the real party in interest,' and ultimately, an infringement claim against the upstream defendant 'is more likely to restore contested property rights nationwide than securing an injunction' against a downstream defendant purchaser. Moreover, the downstream defendant would only be liable if the upstream defendant infringed the plaintiff's patent, and thus, adjudication of the patent infringement claim against the upstream defendant often disposes of the claim against the downstream defendant.

6

*Id.* at 7-8 (citing *Richmond I*, 2014 U.S. Dist. LEXIS 59939, at *25-26) (internal citations omitted).

Plaintiffs argue that "[w]ith the pending settlement of the [Telebrands] cases, and the inclusion of [three design patents] into the present action, judicial economy is no longer served by the stay of [the present case]." Doc. 141, at 3. Neither the settlement of the cases against Telebrands nor inclusion of design patents changes the fact that the downstream retailers are not involved and would not have substantive knowledge of the patent infringement.

      i.    Settlement of the Telebrands Litigation has No Impact on Judge Clark's Rationale for Ordering a Stay of the Retailer Action

Plaintiffs have represented to this Court that because settlement of the Telebrands litigation is impending, "judicial economy is no longer served by the stay of [the present action]. Doc 141, at 3. The only support in their Memorandum in Support is a statement that "[t]here are now only two cases present before the Court, and they deal with the same accused product and same claims of patent infringement." *Id*. This rationale is directly contrary to Judge Clark's reasoning in implementing the stay in the first place, specifically, because the case against the manufacturer and retailer involve *identical* issues of validity:

> Moreover, the manufacturer actions and the Retail Defendant actions all involve…the same three patents, '776, '941 and '942, and the same issues of infringement, invalidity, and unenforceability. The resolution of such issues in the manufacturer actions, and the fact that the manufacturers have agreed to indemnify its' [sic] customers, would not only simplify the Retail Defendants' actions, but could have a major and even dispositive effect on such actions. *See, e.g., Katz*, 909 F.2d at 1464 (observing that additional issues involving customers "may well be mooted" if patent holder is unsuccessful in litigation against manufacturers); *Richmond I*, 2014 U.S. Dist. LEXIS 59939, at *26 (noting that "adjudication of the patent infringement claim against the upstream defendant often disposes of the claim against the downstream defendant").

*Id.* at 9-10.

7

That is, when Judge Clark ordered a stay of each action against the Retail Defendants, he did so because the retailer actions were unnecessarily duplicative of the actions against each respective manufacturer. Nowhere does Judge Clark's Order even imply that the stay was driven by the total number of defendants.[2] Plaintiffs' assertion to the Court that somehow settlement of the Telebrands cases impacts the rationale for instituting the stay is disingenuous, which is underscored by the complete lack of support in its Memorandum in Support. Because the stay was implemented to avoid unnecessary litigation of duplicative claims against the manufacturer (Tristar) and retailer (Wal-Mart), settlement of the Telebrands litigation has no bearing on the rationale underlying the stay in this case, and does not support dissolution of the stay at this time.

      ii.     The Addition of Design Patents to the Action has No Impact on Judge Clark's Rationale for Ordering a Stay of the Retailer Action

As described in great detail in Section II, *supra*, the rationale for ordering a stay of the retail defendants in light of the action against the manufacturer rested on the judicial economy of proceeding against the "upstream" manufacturer instead of the "downstream" retailer. Even Plaintiffs are forced to admit the many reasons that a stay was warranted:

> Judge Clark's reasoning was that if the manufacturers prevail in proving that patents invalid or unenforceable, the Retail Defendants would be able to assert collateral estoppel as a bar to subsequent suit by Plaintiffs. (*Id*., PageID: 888). Conversely, and even though the Retail Defendants would be free to raise the exact same arguments in subsequent litigation, the Patent Exhaustion Doctrine (or prohibition against double recovery) prevents Plaintiff from recovering damages from the Retail Defendant after fully recovering from the manufacture defendants. (*Id*., PageID: 888-889, *citing Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1304 (Fed. Cir. 2007)).

---

[2] Plaintiffs' "Russian nesting doll" comment (Doc. 141, at 7) is especially puzzling in the context of this Motion, as it was inspired by Plaintiff's overzealous tactic of filing superfluous Complaints. Indeed, Judge Clark noted that two of the then-pending actions "can be consolidated since they are identical cases." Doc. 109, at 5. Plaintiffs have already requested and received additional time to file yet another Complaint. Docs. 95, 97.

8

Doc. 141, p. 6.

In his Order, Judge Clark provides many reasons and scenarios by which a stay promotes judicial efficiency and economy.[3] Only one of those reasons (footnote 4, number 8 below) is affected by the inclusion of design patents in the litigation and <u>only</u> affects potential recovery with respect to the design patent infringement claims. To be clear, if Plaintiffs are successful in their design patent infringement claims, they may be entitled to recover damages from the retailer defendant. This alone is not enough to tip the scales to dissolve the current stay with respect to alleged infringement of four utility patents.

More specifically, there is only a single scenario by which Plaintiffs could be forced to re-litigate their design patent claims, namely a complete victory by Plaintiffs on their design patent infringement claims. There is no justification to require the retailer to litigate the entire case at this time, as Judge Clark's reasoning is undisturbed with respect to Plaintiff's claims of utility

---

[3] In determining that judicial economy and efficiency would be served by ordering the stay, Judge Clark considered (1) second hand entities like retailers are not involved and would not have substantive knowledge about the patent infringement, which would begin at the design and manufacture stages; (2) the upstream defendant represents "the real party in interest" and ultimately an infringement claim against the upstream defendant "is more likely to restore contested property rights nationwide than securing an injunction" against a downstream defendant purchaser, (3) the downstream defendant would only be liable if the upstream defendant infringed the plaintiff's patent, and thus, adjudication of the patent infringement claim against the upstream defendant often disposes of the claim against the downstream defendant, (4) although there may be additional issues involving the retail defendants, the prosecution will be advanced if plaintiff is successful on the major premises being litigated, and may well be mooted if plaintiff is unsuccessful, (5) the actions involve the same issues of infringement, invalidity and unenforceability, the resolution of which in the manufacturer action, coupled with the fact that the manufacturer has agreed to indemnify the retailer, would not only simplify the retailer defendant's action, but could have a major and even dispositive effect on its action, (6) if the manufacturer prevails in proving patent invalidity or non-infringement, the retailer would be free to assert collateral estoppel as a bar to a subsequent suit by Plaintiffs, (7) if the manufacturer prevails, it may be able to obtain an injunction preventing Plaintiffs from suing its retailers, (8) if Plaintiffs prevail, they could be precluded from recovering from the retail defendants if they fully collect from the manufacturers, (9) if Plaintiffs obtain injunctive relief against the manufacturers, it would have the practical effect of enjoining the retailers.

patent infringement.  Even Plaintiffs do not argue that Judge Clark's reasoning that judicial economy and efficiency required a stay of their utility patent infringement claims should be disturbed.  They only argue that there is a "near certainty" that Plaintiffs will have to "start anew" against the retailer.  Doc. 141, at 6.  This unsupported and self-serving statement ignores the facts that (1) Plaintiffs must first prevail on their design patent infringement claims despite the tremendous hurdles[4] with respect to same, (2) Plaintiffs will, in any event, not have to "start anew" with respect to the utility patents[5] as Judge Clark opined, and (3) the cost of design patent litigation is substantially lower than the cost of utility patent litigation.

Moreover, Plaintiffs contend that the overriding issue in litigating their design patents against Wal-Mart at a later date is the ability to recover the retailer's profits, despite recovery from the manufacturer. Doc. 141, at 6.  If true, then it follows that a majority of the discovery (and therefore cost)[6] with respect to the design patent infringement claims will be directed towards damages issues -- issues which Plaintiffs concede should be stayed regardless.  Plaintiffs even admit that "the only difference between the Defendants is the amount of damages" (Doc 141, at 7) while simultaneously agreeing that "determination of damages of the Retailer Defendant" should then be stayed pending resolution of the remaining issues." *Id.* pat 4.  This dichotomy evinces Plaintiffs' illogical arguments that contradict the reasoning set forth in Judge Clark's Order.

---

[4] All other Courts that have analyzed Blue Gentian's design patents have concluded the design is dictated by the function of the hose, which according to United States law will render the design patent invalid ("In a design patent, protection is limited to the ornamental features of an article. *citing Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188 (Fed. Cir. 1988)).  Furthermore, upon information and belief, Blue Gentian was forced to voluntarily dedicate virtually identical design patents to the public in Canada in order to avoid a finding of invalidity.

[5] There are only two design patents, each representing a single claim directed to ornamental features of the hose.  In contrast, Plaintiffs are currently litigating thirty utility patent claims over the asserted patents.

[6] Indeed Plaintiffs' discovery costs will already have been spent in the action against the manufacturer.

## IV.    CONCLUSION

Judge Clark's October 2, 2014 Order stayed the action against Wal-Mart because it was judicially inefficient and uneconomical to require Wal-Mart to defend an action that would be simplified, if not mooted, by Plaintiffs' action against Tristar.  Doc. 109, at 9-11.  Neither the settlement of the cases against Telebrands, nor the addition of design patent infringement claims alters the applicability of Judge Clark's rationale.  For the reasons set forth above, Defendants respectfully submit that this Court should deny Plaintiffs' Motion to Dissolve the Stay.

Dated: August 3, 2015,                                        Respectfully submitted,

/s/ Noam J. Kritzer
Noam J. Kritzer
Edward P. Bakos
**Bakos & Kritzer**
147 Columbia Turnpike
Florham Park, New Jersey 07932
Telephone: 908-273-0770
Facsimile: 973-520-8260
nkritzer@bakoskritzer.com
ebakos@bakoskritzer.com

*Attorneys for the Defendants*
*Tristar Products, Inc. and*
*Wal-Mart Stores, Inc.*

## CERTIFICATE OF SERVICE

   I hereby certify that on August 3, 2015, a copy of the foregoing was duly served upon counsel of record for Plaintiff, in the manner indicated:

☐ Via First Class Mail
☐ Via Overnight Courier
☐ Via Facsimile
☐ Via Hand Delivery
■ Via ECF
■ Via Electronic Mail

Thomas R. Curtin
George C. Jones
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962-1991
(973) 292-1700

Edward F. McHale (pro hac vice)
Brian M. Taillon (pro hac vice)
Kenneth W. Cohen (pro hac vice)
McHALE & SLAVIN, P.A.
2855 PGA Boulevard
Palm Beach Gardens, Florida 33410
(561) 625-6575

Dated: August 3, 2015

               /s/ Noam J. Kritzer
               Noam J. Kritzer
               **Bakos & Kritzer**
               147 Columbia Turnpike
               Florham Park, New Jersey 07932
               Telephone: 908-273-0770
               Facsimile: 973-520-8260
               nkritzer@bakoskritzer.com

               *Attorneys for the Defendants*
               *Tristar Products, Inc. and*
               *Wal-Mart Stores, Inc.*