| | |
|---|---|
| BLUE GENTIAN, LLC, NATIONAL EXPRESS, INC., and TELEBRANDS CORP.,[1] | No. 1:13-cv-1758 (NLH/AMD) |
| | **OPINION** |
| Plaintiffs, | |
| v. | |
| TRISTAR PRODUCTS, INC. and WAL-MART STORES, INC. d/b/a SAM'S CLUB and SAM'S WHOLESALE CLUB, | |
| Defendants. | |

**APPEARANCES:**

THOMAS R. CURTIN
GEORGE C. JONES
GRAHAM CURTIN, P.A.
4 HEADQUARTERS PLAZA
P.O. BOX 1991
MORRISTOWN, NEW JERSEY 07962-1991
    Counsel for Plaintiffs Blue Gentian, LLC and National
    Express, Inc.

EDWARD F. MCHALE
BRIAN M. TAILLON
KENNETH W. COHEN
ANDREW D. LOCKTON
MCHALE & SLAVIN, P.A.
2855 PGA BOULEVARD
PALM BEACH GARDENS, FLORIDA 33410
    Appearing pro hac vice on behalf of Plaintiffs Blue
    Gentian, LLC and National Express, Inc.

---

[1] By a June 19, 2017 Order, Telebrands Corp. was added as a party plaintiff and counterclaim defendant.

EDWARD P. BAKOS
NOAM J. KRITZER
BAKOS & KRITZER
147 COLUMBIA TURNPIKE, SUITE 102
FLORHAM PARK, NEW JERSEY 07932
    Counsel for Defendants

J. STEVEN BAUGHMAN
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
2001 K STREET, NW
WASHINGTON, DC 20006-1047
    Appearing pro hac vice on behalf of Defendant Tristar
    Products, Inc.

**HILLMAN, District Judge**

This is a patent-infringement action relating to an expandable hose product. Plaintiffs allege Blue Gentian, LCC is the owner of U.S. Patent No. 8,757,213, which is a continuation of several other patents. Additionally, Plaintiffs allege Blue Gentian, LLC is the owner of U.S. Design Patent D722,681, which is a continuation in part of an earlier design patent. Plaintiffs assert claims of direct infringement of these patents pursuant to 35 U.S.C. § 271(a) and indirect infringement of these patents pursuant to 35 U.S.C. § 271(b) and (c). Defendants contest these claims and assert counterclaims of noninfringement and invalidity against Plaintiffs.

Defendants now move under Federal Rule of Civil Procedure 42(b)[2] for a Separate Hearing on Correction of Inventorship

---

[2] Federal Rule of Civil Procedure 42(b) provides: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate

pursuant to 35 U.S.C. § 256.  In particular, Defendants ask this Court to schedule a one-day evidentiary hearing on the issue of inventorship to resolve whether Gary Ragner should be named as an inventor on the patents-in-suit.  Currently, only Michael Berardi is named as an inventor.

Plaintiffs argue Defendants do not have standing to make such a motion, that the motion is too delayed and is barred by equitable estoppel, and that the claim of an error in inventorship is meritless.  The Court finds Defendants do have standing, that the motion is not fatally delayed and equitable estoppel does not apply, and that any arguments relating to the merits of Ragner being added as an inventor must be reserved for an evidentiary hearing.  Accordingly, the Court grants Defendants' motion and will conduct an evidentiary hearing on inventorship.

35 U.S.C. § 256 provides:

(a) Correction.  Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

(b) Patent valid if error corrected.  The error of omitting inventors or naming persons who are not

---

issues, claims, crossclaims, counterclaims, or third-party claims.  When ordering a separate trial, the court must preserve any federal right to a jury trial."

inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

The Court first addresses whether Defendants have standing to bring this motion. Plaintiffs argue Defendants do not have an ownership interest and will not acquire an ownership interest, and thus cannot bring a § 256 claim for lack of standing. Plaintiffs argue there is no precedent for the proposition that a licensee has a sufficient financial interest to confer standing.[3]

"[Section 256] provides a cause of action to interested parties to have the inventorship of a patent changed to reflect the true inventors of the subject matter claimed in the patent." Fina Oil & Chem. Co. v. Ewen, 123 F.3d 1466, 1471 (Fed. Cir. 1997). "[A]n expectation of ownership of a patent is not a prerequisite for a putative inventor to possess standing to sue to correct inventorship under § 256." Chou v. Univ. of Chi., 254 F.3d 1347, 1358 (Fed. Cir. 2001). "The statute imposes no requirement of potential ownership in the patent on those seeking to invoke it." Id.

---

[3] Plaintiffs also argue Defendants cannot invoke third-party standing. Defendants only argue they have direct standing based on their "own concrete financial interest and injury-in-fact." Defendants agree third-party standing is inapplicable here.

4

"The validity of a patent requires that the inventors be correctly named." Id. at 1359. "It follows that parties with an economic stake in a patent's validity are entitled to be heard on Inventorship issues . . . ." Id. Accordingly, the Federal Circuit "interpret[s] § 256 broadly," both for the benefit of inventors and for "the public interest of assuring correct Inventorship designations on patents." Id. at 1358. The Court will interpret § 256 similarly.

The question before the Court is then whether Defendants have an economic stake in the patents sufficient to confer standing. The Court finds Chou, 254 F.3d 1347 and Larson v. Correct Craft, Inc., 569 F.3d 1319 (Fed. Cir. 2009) instructive. In Chou, the Federal Circuit found the district court erred in concluding that Chou did not have standing to sue for correction of inventorship. 254 F.3d at 1353. Chou had sued for correction of inventorship under 35 U.S.C. § 256, seeking to be named as a sole inventor or co-inventor. Id. at 1354. The district court found Chou lacked standing "because she could claim no ownership of the patents, having surrendered all her rights to the University under an employment agreement." Id. The Federal Circuit considered the issue of "whether a putative inventor who is obligated to assign her invention to another is entitled to sue for correction of Inventorship under § 256." Id. at 1358.

5

The Federal Circuit found "Chou has alleged a concrete financial interest in the patent, albeit an interest less than ownership." Id. The University was required to provide a percentage of royalties from licensing activities, among other things. Id. The Federal Circuit found "[i]f Chou has indeed been deprived of an interest in proceeds from licensing the invention and in stock ownership by the conduct that she alleges, then she will have suffered an injury in fact, i.e., the loss of those benefits." Id.

> That loss would be directly traceable to Roizman's alleged conduct in naming himself as the sole inventor of discoveries that she at least partly made, and it would be redressable by an order from the district court to the Director of the PTO to issue a certificate naming Chou as an inventor, which would entitle her under the University's policy to a share of the licensing proceeds . . . .

Id. Accordingly, the Federal Circuit found "Chou [wa]s entitled to sue for correction of inventorship under § 256." Id.

In Larson, the Federal Circuit distinguished Chou, finding Larson "affirmatively transferred title to the patents to Correct Craft, and he stands to reap no benefit from a preexisting licensing or royalties agreement." 569 F.3d at 1327.

While both Chou and Larson addressed an inventor transferring his interest to another party, the reasoning of the Federal Circuit translates here. Chou dealt with an individual

6

with no ownership interest in the patents, but who received a financial benefit from the patents. The same is true here.

Defendants argue they have "a concrete financial interest in the correction of the patents" due to Tristar Products, Inc. being an exclusive licensee of Ragner Technology pursuant to a License Agreement. Thus, Defendants derive a financial benefit from the patents and have an economic stake in their validity, making Defendants analogous to Chou.

Plaintiffs rely on Armor Screen Corp. v. Storm Catcher, Inc., No. 07-81091, 2008 WL 5746938 (S.D. Fla. Nov. 10, 2008). In Armor Screen, the parties were in the business of manufacturing and installing hurricane protection screens. Id. at *1. On November 16, 2007, the plaintiff filed a complaint against the defendants alleging patent infringement, among other claims. Id. The defendants sought correction of inventorship pursuant to 35 U.S.C. § 256 by way of a May 15, 2008 motion. Id. The defendants alleged a former president of the plaintiff was a co-inventor. Id. The defendants claimed this individual assigned his rights to one of the defendants on June 11, 2008, such that the defendants would have an ownership interest. Id. at *3. The court found that "at the time Defendants filed their Motion to Correct Inventorship, no Defendant claimed to be a putative inventor of [the patent], nor did any Defendant claim any ownership or concrete financial interest in [the patent]."

Id. at *10.

Armor Screen is distinguishable, as the reason for the court's decision hinged on the assignment occurring after the motion was filed. Indeed, the court stated: "The Court declines to find that Defendants acquired standing to seek correction of inventorship under section 256 based on events occurring after Defendants' filed the instant Motion." Id. The License Agreement in this case predates the original filing in this action, and long predates this motion. Given Defendants' economic stake in the patents, the Court finds Defendants have standing to bring this motion.

Plaintiffs also argue Defendants' motion is too belated, as they never previously asserted Ragner was a co-inventor and have never before requested correction of inventorship, and they never sought to add Ragner as a party or relevant witness. Plaintiffs claim Defendants waived the inventorship issue and that opening this issue would be unduly prejudicial and unfair to Plaintiffs.

The Court acknowledges that granting this motion and scheduling a hearing could further delay resolution of this case. However, the Court does not find this a sufficient reason to deny such a hearing, particularly given the Federal Circuit's broad interpretation of § 256 and interest in having inventors correctly listed on patents, and given that Defendants' success

at the hearing could expedite resolution of this matter and related matters.[4]

Plaintiffs also argue Defendants' claim is barred under equitable estoppel because of extreme delay, citing MCV, Inc. v. King-Seeley Thermos Co., 870 F.2d 1568 (Fed. Cir. 1989). In Jamesbury Corp. v. Litton Industrial Products, Inc., 839 F.2d 1544 (Fed. Cir. 1988), the Federal Circuit set forth the following test for equitable estoppel: "(1) unreasonable and inexcusable delay in filing suit, (2) prejudice to the infringer, (3) affirmative conduct by the patentee inducing the belief that it abandoned its claims against the alleged infringer, and (4) detrimental reliance by the infringer." Id. at 1553-54.

This test was adjusted to an inventorship claim in MCV, cited by Plaintiffs, as follows: "(1) unreasonable and inexcusable delay in filing suit, (2) prejudice to the defendant as a result of the delay, (3) affirmative conduct by the party against whom estoppel is asserted inducing the belief that it had abandoned its claim, and (4) detrimental reliance by the party asserting estoppel." 870 F.2d at 1571.

In A. C. Aukerman Co. v. R. L. Chaides Construction Co.,

---

[4] The Court notes, as Defendants point out, that just last June, Plaintiffs moved to add Telebrands Corp. as a plaintiff, which was granted by Magistrate Judge Donio. The motion was granted despite concerns of delay.

960 F.2d 1020 (Fed. Cir. 1992), the Federal Circuit determined this test "confusingly inter[t]wines the elements of laches and equitable estoppel" and "expressly overruled" it.  Id. at 1042.  Accordingly, the new test, in the inventorship context, is as follows:

> (1) the patentee, through misleading words, conduct, or silence, led the alleged infringer to reasonably infer that the patentee did not intend to enforce its patent rights; (2) the alleged infringer relied on the patentee's conduct; and (3) due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim.

Intel Corp. v. Future Link Sys., LLC, No. 14-377, 2017 WL 3334703, at *4 (D. Del. July 31, 2017).

Neither party addressed the correct test for equitable estoppel in their briefs.  Regardless, under what the Court determines is the correct test, the claim does not succeed.  Plaintiffs have not presented the Court with sufficient evidence of any misleading conduct as to Defendants' belief that inventorship was incorrect.  Accordingly, it was not reasonable for Plaintiffs to infer Defendants would never contest this by asking for correction of inventorship, despite not having done so earlier.[5]  Equitable estoppel does not apply here.  Despite

---

[5] Defendants direct our attention to Defendant Tristar Products, Inc.'s Answer to Fifth Amended Complaint, Affirmative Defenses, and Counterclaims, which provides that, following an August 23, 2011 meeting with Ragner, Berardi filed a patent application "that purported to claim novel features of the prototypes of the Microhose product demonstrated by Ragner" at

10

the lateness of this motion in the litigation, there are no indications of misleading conduct from Defendants.

Finally, Plaintiffs argue the claim that Ragner is a co-inventor is "substantively baseless." Plaintiffs argue Ragner "never conceived of an expandable hose with the structure and composition of the hose claimed by Mr. Berardi in his patents." This is an issue that should be reserved for an evidentiary hearing.

This leaves the issue of whether the pleadings need to be amended. Defendants argue that, "while Defendants' pleadings do not expressly call out a motion under § 256, those pleadings affirmatively request relief that the Court deems 'proper and just.'" The Court does not find Defendants' request for any "proper and just" relief encompasses relief under § 256. Accordingly, an amendment of Defendants' pleadings is required.

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading . . . with . . . the court's leave," which should be freely granted "when justice so requires." "[A] district court justifiably may deny leave to amend on grounds

---

the meeting. This is further repeated in Defendant Wal-Mart Stores, Inc.'s Answer to Fifth Amended Complaint, Affirmative Defenses, and Counterclaims. Plaintiffs, in their opposition brief, also acknowledge that "Tristar and Ragner Technology even filed a separate action directed specifically to the claim that Mr. Berardi 'stole' his patented invention from Mr. Ragner. See Civil Action No. 1:15-cv-07752-NLH-AMD."

11

such as undue delay, bad faith, dilatory motive, and prejudice, as well as on the ground that an amendment would be futile." Smith v. NCAA, 139 F.3d 180, 190 (3d Cir. 1998).

The Court notes Plaintiffs' arguments on undue delay and prejudice. The Court acknowledges that granting this motion will require expending additional resources as well as delay a decision on the Markman issue which is presently before the Court. The Court also notes Defendants certainly had prior opportunities to amend the pleadings, and Defendants do not appear to provide the Court with an explanation for the delay. However, given the nature of the amendment, and that facts to support such an amendment are laid out in the pleadings to an extent already, the Court grants Defendants leave to file amended pleadings.

Accordingly, for "convenience" and to "expedite and economize," Fed. R. Civ. P. 42(b), the Court grants Defendants leave to amend their pleadings and will schedule an evidentiary hearing to decide the inventorship issue prior to the Court issuing the Markman rulings. The parties are permitted to submit simultaneous thirty-page briefs thirty days before the hearing and simultaneous thirty-page briefs thirty days after the hearing.

Date: January 30, 2018     s/ Noel L. Hillman  
At Camden, New Jersey     NOEL L. HILLMAN, U.S.D.J.